Approved: _____
MATHEW ANDREWS / SAM ADELSBERG
Assistant United States Attorneys

Before:     THE HONORABLE LISA MARGARET SMITH
            United States Magistrate Judge
            Southern District of New York

- - - - - - - - - - - - - - - - X
                                 :    COMPLAINT    19 mag 1458
UNITED STATES OF AMERICA         :
                                 :    Violation of
       - v. -                    :    18 U.S.C. § 1201
                                 :
JAVIER ENRIQUE DA SILVA ROJAS,   :    COUNTY OF OFFENSE:
a/k/a "Javier Da Silva,"         :    WESTCHESTER COUNTY
                                 :
            Defendant.           :
                                 X
- - - - - - - - - - - - - - - - 

SOUTHERN DISTRICT OF NEW YORK, ss.:

        DANIEL MCKENNA, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

COUNT ONE
(Kidnapping)

        1.      From on or about January 28, 2019 to on or about January 29, 2019, in the Southern District of New York and elsewhere, JAVIER ENRIQUE DA SILVA ROJAS, a/k/a "Javier Da Silva," the defendant, unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted and carried away and held for ransom and reward and otherwise, a person when the person was willfully transported in interstate and foreign commerce, and the defendant traveled in interstate and foreign commerce and used the mail and any means, facility, and instrumentality of interstate and foreign commerce in committing and in furtherance of the commission of the offense, to wit, DA SILVA ROJAS kidnapped a woman, Valerie Reyes (the "Victim"), in New Rochelle, New York, bound her feet and hands, placed packing tape over her mouth, put her in a suitcase, and transported her to Greenwich, Connecticut, where he disposed of her body, resulting in the death of the Victim.

(Title 18, United States Code, Section 1201(a)(1).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been a Special Agent at the FBI for nearly twenty years, and have been personally involved in the investigation of this matter. This affidavit is based upon my conversations with law enforcement agents, witnesses and others, as well as my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## THE MISSING PERSON REPORT AND VICTIM IDENTIFICATION

3. Based on my conversations with law enforcement officers from the Greenwich Police Department ("GPD") and the New Rochelle Police Department ("NRPD"), I know, among other things, the following:

a. On or about January 30, 2019, at approximately 2:43 p.m., Valerie Reyes (the "Victim") was reported missing to the New Rochelle Police Department by her mother, father, and boyfriend.

b. On or about February 5, 2019, public works personnel located a red suitcase near Glenville Road and Stillman Lane in the Town of Greenwich, Connecticut. Public works personnel unzipped the suitcase and found a deceased female inside. Public works personnel subsequently contacted law enforcement, who responded to the scene.

c. Upon inspecting the suitcase, law enforcement officers found a deceased female in her 20-30s with shoulder length black hair. The female was barefoot with an unbuttoned shirt and denim jeans. She was bound at the feet and knees, and her hands were bound behind her back with what appeared to be white twine and packing tape. There was also packing tape over her mouth and chin. There were obvious signs of head trauma including bruising around the face and a large hematoma to the deceased female's forehead. At the time law

2

enforcement discovered the body, the deceased female was in the early stages of decomposition with mottling around her hands and feet.

        d. The next day, on or about February 6, 2019, an assistant medical examiner conducted an autopsy on the deceased female and found the cause of death to be a homicide.

        e. The Victim's father and brother positively identified the deceased female as the Victim the same day.

### THE INVESTIGATION

        4. Based on my review of account records from a bank used by the Victim (the "Bank") with a location in New Rochelle, New York ("Bank Branch-1"), I know that on or about January 29, 2019, the Victim's debit card was used. Specifically, at approximately 5 a.m., the Victim's debit card was used at an ATM at Bank Branch-1 (the "Bank Branch-1 ATM") to withdraw approximately $1,000.

        5. Based on my review of footage from a City of New Rochelle pole camera located in the area of Bank Branch-1 and my review of footage from the Bank Branch-1 ATM, I know that on or about January 29, 2019 at approximately 5 a.m., a black Honda CR-V (the "Honda") pulled up toward Bank Branch-1 and parked across the street in a neighboring parking lot. An individual exited the vehicle, crossed the street, and entered the Bank Branch-1 vestibule. The individual, who appears to be male, wore a black hooded sweatshirt over his head, dark pants, and black sneakers with white soles. The individual then exited Bank Branch-1, entered the Honda, and drove westbound.

        6. Based on my conversations with a law enforcement officer from the Greenwich Police Department ("Officer-1"), I know that New Rochelle city cameras observed the path taken by the Honda from the Bank Branch-1 ATM.

        7. Based on my review of images from a license plate reader located on the path taken by the Honda, I know that on or about January 29, 2019, at approximately 6:27 a.m., a 2017 Honda CR-V vehicle, color black with a specific license plate (the "License Plate") was captured by a license plate reader located at the intersection of North Avenue at Lincoln Avenue in New Rochelle, New York.

3

8. Based on my conversations with Officer-1, who reviewed records from the New York Department of Motor Vehicles, I know that the Honda is registered to a company (the "Company"), with an address in Flushing, New York (the "Flushing Address"). Based on public source information, I also know that the Company is the parent company of rental car company (the "Rental Car Company").

9. Based on my conversations with Officer-1, I know that on or about February 9, 2019, a law enforcement officer contacted the Rental Car Company. A representative from the Rental Car Company stated, in substance and in part, that the Flushing Address was also a rental location for a car sharing company (the "Car Sharing Company").

10. Based on my conversations with Officer-1, I know that on or about February 9, 2019, law enforcement contacted the Car Sharing Company's regional security director. The regional security director confirmed that the Honda was located in the Car Sharing Company parking lot at the Flushing Address. The regional security director further stated that the Honda was rented by an individual ("Person-1") from on or about January 28 through on or about January 29, 2019.

11. Based on my conversations with Officer-1, who reviewed account records of the Car Sharing Company, I have learned that Person-1 is the holder of an account at the Car Sharing Company. I have also learned that a second driver, JAVIER ENRIQUE DA SILVA ROJAS, a/k/a "Javier Da Silva," the defendant, is an authorized user on Person-1's Car Sharing account.

12. Based on my conversations with Officer-1, who reviewed account records from the Car Sharing Company, the account records further identify an apartment in a condominium building in Flushing, New York (the "Flushing Condominium"), as the address of JAVIER ENRIQUE DA SILVA ROJAS, a/k/a "Javier Da Silva," the defendant.

13. Based on my conversations with Officer-1, who reviewed images from surveillance cameras located at the Flushing Condominium, I know, among other things, that on or about January 28, 2019, JAVIER ENRIQUE DA SILVA ROJAS, a/k/a "Javier Da Silva," the defendant, left the Flushing Condominium at approximately 10:50 p.m., wearing a black hooded sweatshirt over his head, dark pants, and black sneakers with white soles. DA SILVA ROJAS' clothing matches that of the unknown individual

who was captured in bank surveillance footage using the Victim's debit card on or about January 29, 2019. *See supra* ¶ 4. Additionally, on the next day, on or about January 29, 2019, at approximately 9:43 a.m., the footage shows DA SILVA ROJAS returning to the Flushing Condominium wearing a long tan coat and carrying a duffel bag. DA SILVA ROJAS left the Flushing Condominium without the duffel bag, several minutes later.

14. Based on my conversations with Officer-1, who reviewed images from surveillance cameras located at the Flushing Address, I know that on or about February 6, 2019, JAVIER ENRIQUE DA SILVA ROJAS, a/k/a "Javier Da Silva," the defendant, rented the Honda from the Car Sharing Company. Surveillance cameras located at the Flushing Address parking lot depict DA SILVA ROJAS returning the Honda to the same parking lot later the same day.

15. Based on my conversations with Officer-1, I know that the Victim's family members told law enforcement that the Victim had dated an individual named "Javier" but that the Victim had ended the relationship approximately one year before.

16. Based on my conversations with Officer-1, I know that law enforcement officers searched the Victim's home in New Rochelle, New York (the "Victim's Residence") on or about February 5, 2019. During the search, the officers found a drawing of an unidentified individual.

17. Based on my conversations with Officer-1, who reviewed a social media account appearing to belong to JAVIER ENRIQUE DA SILVA ROJAS, a/k/a "Javier Da Silva," the defendant, I know that the drawing located in the Victim's home appears to be identical to the profile picture for the social media account in the defendant's name.

18. On or about February 11, 2019, officers from the Greenwich Police Department and the New Rochelle Department arrested JAVIER ENRIQUE DA SILVA ROJAS, a/k/a "Javier Da Silva," the defendant, based on probable cause for the crime of larceny based on his use of the Victim's debit card.

19. Based on my observation of JAVIER ENRIQUE DA SILVA ROJAS, a/k/a "Javier Da Silva," the defendant, I believe that DA SILVA ROJAS is the individual depicted in the drawing found in the Victim's home.

5

20. Later on or about February 12, 2019, JAVIER ENRIQUE DA SILVA ROJAS, a/k/a "Javier Da Silva," the defendant, was interviewed at the New Rochelle Police Department. I reviewed a contemporaneous video of the interview.[1] At the beginning of the interview, DA SILVA ROJAS was *Mirandized* in Spanish. DA SILVA ROJAS then waived his *Miranda* rights and stated, in substance and in part, that on or about January 29, 2019, he had sex with the Victim at the Victim's Residence. DA SILVA ROJAS noted that at some point the Victim fell to the floor and hit her head. DA SILVA ROJAS then indicated that he placed packing tape over her mouth, bound her legs and hands, and put her in a suitcase. He then said that he placed the suitcase in his car and drove away. After driving for some time, DA SILVA ROJAS stated that he placed the suitcase in a forest.

WHEREFORE, deponent respectfully requests that JAVIER ENRIQUE DA SILVA ROJAS, a/k/a "Javier Da Silva," the defendant, be arrested and imprisoned or bailed, as the case may be.

_____
DANIEL P. MCKENNA
Special Agent
Federal Bureau of Investigation

Sworn to before me this
12th day of February, 2019

_____
THE HONORABLE LISA MARGARET SMITH
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

---

[1] The interview, which was conducted partially in Spanish and partially in English, was recorded.

6